Thank you, Your Honor. May it please the Court, Jason LaFawn for Oura Health and Oura Ring, Inc., I'd like to reserve five minutes. Keep an eye on the clock, as you saw before. Yes, Your Honor. The District Court conjured a rule that the mere existence of a second contract between two litigants mutates what would normally be a scope question about an arbitration agreement into a formation question. And as the Fourth Circuit's recent decision in Modern Perfection shows, that's not how any of this works. Did Modern Perfection address Coinbase? It did, very much. It talked a lot about it because it had to figure out whether or not the plaintiffs made the type of fourth-order dispute that Coinbase spoke about. And so the Court looked to the plaintiffs' arguments, and it saw that what the plaintiffs were actually arguing is that they did not agree to arbitrary disputes under this second contract. Aren't we dealing with a fourth-order dispute here? No, we are not, Your Honor. And Modern Perfection explains why. A fourth-order dispute occurs when two contracts conflict as to who decides the question of arbitrability. Here, we have one contract that delegates arbitrability to the courts, and we have an alleged second contract. Well, a contract that you've, I believe, conceded in the district court, and the district court recognized it had to view that it did exist. No, that's not correct, Your Honor. When we were speaking on that ---- Which part is not? That the district court didn't base its finding on that, or that you didn't necessarily concede that it existed for purposes of finding an agreement? Both of them, Your Honor, because the district court said it did not need to. It could wait until another day to reach that point. Yeah, but it was based upon your concession, correct? No, that's not correct, Your Honor. Our argument was similar to a 12b-6 argument, and that is even if you take what they say about the contract as true, they still lose. That's a typical 12b-6 argument. It is not the case in any ---- so in arbitration, a motion to compel is sort of like a mini-trial. It is not the case in any sort of litigation that you take the plaintiff's allegation as true to see if they win. You take them, if it's true, to see if we win. And so the district court, and this sort of gets to my third sort of issue and alternative argument, is that at the very least this Court needs to remand for if a second contract matters, the district court first needs to decide whether a second contract exists. That's what the FAA Section 4 demands. Well, we don't have any ---- I mean, I think you're right. Section 4 treats this as a ---- makes available a summary trial. But we don't have any factual findings here, and I think we have case law that suggests that the proper analogous posture is Rule 56, meaning that we would take the facts in the light most favorable to the nonmoving party. Well, I think the district court would. The district court did not do that. And if the Court wants to do that here, it will find many, many fact questions. But I think it's also important to ---- Well, if there are fact questions, which way does it cut? There has to be clear and unmistakable evidence of an agreement to arbitrate. So if it's the nonmoving party, you're the moving party, so the nonmoving party is a TIA. That's correct, Your Honor. But we are mashing up a lot of different questions here. The clear and unmistakable rule goes to whether the parties have delegated arbitrability. That question is easy, because under this Court's precedent, the things, the words that are in the arbitration clause match exactly what this Court has said is clear and unmistakable. But we're not really talking about whether delegating arbitrability. We're talking about whether there was an arbitration agreement at all. No, we are not, Your Honor. The judge found one. The plaintiffs conceded one. There is an arbitration agreement. Nobody disputes that. Well, there's an arbitration agreement in your side of the agreement, meaning the ---- In the shareholder agreement. In the shareholder agreement. But I didn't find any arbitration agreement in the so-called advisor agreement. That's ---- And I don't think the Court found there was one either. That's correct, Your Honor. And our argument is that the arbitration agreement, the ---- Your argument is the arbitration agreement controls, and there is no advisor agreement. Their argument is there is an advisor agreement, and there was no arbitration ever agreed to. Your Honor, our argument is that even if that second contract exists, this Court still needs to reverse, because ---- Because? Because the question of whether or not disputes under that second contract fall within the arbitration clause in the first contract is a question of scope. In that scope question, the parties clearly and unmistakably delegated ---- Why is it that? Why is it not instead a determination of what they agreed to? We're not talking about the scope of the agreement. We're looking at the agreements. We're talking about what was agreed to by the parties. Well, Your Honor ---- Well, in my book, that's always a court question. That's not correct, Your Honor. What was agreed to by the parties, and I will point you first to this Court's decision in Portland Gas and Electric. It involved multiple contracts between multiple parties. One of ---- two of those parties went to arbitration, and then they inpleted Portland Gas and Electric and sureties, for which Portland Gas and Electric and the sureties did not have an arbitration clause. And this Court said that whether or not Portland Gas and Electric and those sureties ---- sorry, whether or not Portland's agreement with this other party and what that arbitration clause said included the dispute with the sureties was a question for the arbitrator. And so I think here we're honing in on an issue that where the sort of origin of the district court's mistake here. The district court framed the formation inquiry as whether these parties formed an agreement to arbitrate these claims. That's a compound question. The first sub-question is whether the parties formed any agreement to arbitrate at all. The second sub-question is if they did, do the claims fall under that arbitration clause. This question ---- But that seems to invert the order that the Coinbase relies on us to ---- has reminded us to work through, right? Once there's another contract, there's another contract. And that contract reportedly covers the dispute, right? And again, we may read it differently, but the Court says that this other contract exists or we're bound to at least assume that it exists. So now we've got two contracts. How would you distinguish this from the Johnson case? Johnson did not involve delegation, number one. And the ---- Well, why would delegation with respect to the terms of use and the online tire purchase change the separate transaction? The whole point is, you know, at the bottom of this as we're trying to figure out. I get that it's hard to distinguish between the separate contracts and the scope, but ---- So first of all, Johnson would have come out the same way if there were no second contract. If Walmart ---- if Johnson had been shopping at Walmart and Walmart had accused him of shoplifting and he had then sued them for unlawful imprisonment and they brought the arbitration clause because it would have technically fallen under what they said, Johnson's analysis would have been exactly the same. So the second contract doesn't matter. The other reason that what Johnson says matters is because there is one kind of delegation or there is one kind of formation question that is not delegable. And that is, Karamark says this, whether there is any arbitration agreement at all. And this ---- that gets ---- because everything else is scope. If you're asking about whether or not a dispute under a second contract falls within the arbitration clause in the first, that is scope. That's what Portland Gas and Electric says. It's also what Mamet v. Masters says. So just to go down the scope road a little bit, I assume that your client has employment agreements with its executives and that those officers may have shareholder agreements. So do you contend that if they are also shareholders under the adherence agreement, that those employment agreements incorporate the arbitration from the shareholder agreements? Because that seems to be the analogy here. And I guess I ---- that seems like an unlikely reading that you're clearly dealing with an agreement to be an employee or a contractor, advisor, an officer, and an agreement that all shareholders have. Yeah. And this is where the district court went wrong. The district court ignored the text of the arbitration clause. And what this court has said and what the Supreme Court has said is that the main purpose of the FAA is to enforce the terms of an arbitration agreement. But the arbitration clause says the transactions contemplated herein. Yes. This was said in 2017 and 2018. So a general shareholder agreement, it's the position that the transactions that Mr. Atiyah alleges were contemplated in the same way that any other major shareholder of the company would be contemplated to transact? Yes, Your Honor. And to be clear, the district court didn't find that these transactions were not contemplated because the district court didn't look at the text, did not apply the text. The transaction here is an issuance of options. And that is covered multiple times in the shareholder agreement. So even as to an officer, the CEO of Oura Ring, if they get options, your position is, yep, they'd be swept up with all these other shareholders in terms of it. If they've agreed to an arbitration agreement about disputes arising out of it? That governs every other contract. That's your position. Sorry? That governs every other contract. It governs what the text of the arbitration clause says. And that's what Portland Gas and Electric says. And that's why that is an arbitrability dispute that goes to the arbitrator. Only one formation dispute is not delegable. And that is whether there is any arbitration agreement at all. That's what Caremark says. That's what Granite Rock says. And importantly, Granite Rock, Caremark relies on Granite Rock. Granite Rock says that labels do not control. It is the substance of what is going on. And asking whether or not a contract has been formed to cover these disputes is two questions. And only the first one is not delegable. The second one is scope. Under this Court's clear precedent, the second one is scope. Mr. LaFond, do you want to? Mr. LaFond, I want to go back to what I view as a concession before the district court, because I'm troubled by your answer. I'm going to read what the district court said in its opinion. Getting to the bottom of whether the advisor agreement was formed is a task for another day. At this stage in the litigation, defendants concede, as they must, that the allegations must be construed in the light most favorable to the nonmoving party and argue that even if the advisor agreement did bind the parties, it also provides for arbitration. Are you suggesting to us that that concession was not made before the lower court? Is that what you're saying? Your Honor, I am saying that we conceded that taking the allegations as true, the plaintiffs still lose. But even if we did concede that, FAA Section 4 speaks to a court. It says the court shall do this. There is no waiver and there is no invited error. But to be clear, what we said in the court was that if everything Adia says is true, he still must arbitrate, because we said even if this contract exists, if you look at it, and we argued below, we said, look, it refers to a shareholder agreement. And the court said, no, it didn't incorporate that. But the court recognized. The court said it has to wait until another day. The court didn't say that we conceded that there was a contract. And so I will reserve what little time I have left. Well, let me ask you one more question. We'll give you additional time. Thank you, Your Honor. Because the district court also said in that same sentence, going with what Judge Christensen came up with, defendants concede, as they must, that the allegation must be construed in light of most favorable to the nonmoving party, and argue that even if the advisor agreement did bind the parties rather than the shareholder agreement, the advisor agreement provides for arbitration. How does the advisor agreement provide for arbitration? Not the way we argued it below, Your Honor. I can... Change your argument? Well, the argument below is just incorrect. What it should have been. I can tell you what it should have been. I mean, my worry is that I looked at the advisor agreement. I don't find anything in there that provides for arbitration. Well, I can tell you where it is, Your Honor. It says... Well, you can tell me where it is, but it cites an agreement, which is long before your share agreement, and it talks about the transfer of shares, which has nothing to do with what your situation is here. So I'm trying to figure out what you really are doing. Well, I wasn't planning to make that argument, but I'm happy to tell you the alleged advisor agreement says that the person who is signing it has read the plan. In the context, that is the equity plan. And as our declaration said, the only equity plan in existence at that time was the 2016 equity plan, and that's in the record. If you go and look at that, it says that any stock option agreement... Even though there was a... The advisor agreement does not talk about it? It says the plan, Your Honor. Oh, I see. Even though it cites 2015? That's the shareholder agreement. I'm talking about the plan, Your Honor. The plan is the equity plan, 2016, and under that it says anybody who enters into a stock option agreement under this plan agrees to arbitrate. All right. I see your argument now. Thank you, Mr. LaFond. Ms. Peterson. Good morning. May it please the Court, Sarah Peterson with Cobblins Patch, Duffy & Bass, on behalf of the appellee, Dr. Peter Attia. Just to address the argument, first, that counsel was just making. It's a brand-new argument, never made before, not made in the papers, about the advisor agreement somehow incorporating an equity plan, which according to counsel contains an arbitration provision. It was never made before, and this Court shouldn't consider it. As to ORA's primary argument in its opening brief, that the district court erred because its analysis should have begun and ended with the delegation clause in the shareholder agreement, that position is squarely inconsistent with this court's precedent in Johnson v. Wal-Mart and the Supreme Court's recent authority in Coinbase v. Soosky, both of which say that the approach that ORA urges does not apply in the two-contract scenario presented here. That scenario, the court is required to conduct an analysis of which contract applies to the case, which is exactly what the district court did in this instance. As I understand the facts of this situation, your client entered into an agreement with the president of the defendants or represented the defendants sometime in late 2016? If you're talking about the advisor agreement, that was entered not in 2016, but in 2019, February 2019. 2019 is when the written agreement came. Correct. But they started, he had a meeting with Mr. I don't want to say his name because I'm from Idaho and I'll say it wrong, but he entered into this agreement with this guy, and he started then to provide medical consulting and advisory services in exchange for stock options. That was in late 2016, correct? Correct. The engagement began in 2016. It was memorialized in February of 2019. Right. In January 2019, defendants mailed him an agreement. He signed the agreement, right? Correct. It's my understanding then the shareholder agreement, when did that come? Dr. Atiyah signed an adherence agreement, which bound him to the shareholder agreement. That was in 2018. So 2018, that was two years after the 2016 agreement with the representative of the defendants? That's correct. It was two years after the engagement began and the services began to be provided, but it was before the agreement with Dr. Atiyah for the advisory services is signed in February 2019. Do we know from the record why there was that two-year delay between the parties reaching, in effect, an agreement and then the actual agreement being ostensibly executed? The evidence in the record is that the parties came to this oral agreement and understanding there was performance. Dr. Atiyah repeatedly asked that the agreement be memorialized in writing. It wasn't done so until January of 2019. So the delay is just due to a delay on ORA's part. Could you address my concerns regarding what I perceived and believed to be the concession that we were talking about, please? Yes, Your Honor. We fully agree with Your Honor that there was a concession by ORA on this procedural point that it tries to make something of now on appeal. But the concession is at 3 ER 262 of the record. And to set it up, ORA is claiming now on appeal for the first time that Johnson and Coinbase are distinguishable because ORA in this case disputes or intends to dispute the validity of the advisor agreement when this case reaches the merit stage. And ORA says that the district court shouldn't have accepted Dr. Atiyah's allegations that there exists this advisor agreement and that it's valid and enforceable. But in the district court, ORA merely noted that for the district court that it intended to dispute the advisor agreement when the case reached the merit stage, but then went on to say, nevertheless, the district court should accept Dr. Atiyah's allegations about that agreement as true for purposes of this motion. So it absolutely made a concession that the district court should accept the existence and validity of the advisor agreement for purposes of resolving the motion, and that's exactly what the district court did. And, Ms. Peterson, I guess then the converse of that would be that you would concede that if through the litigation it's established as to the facts determined that the contract governed the arbitration, that ORA could move to arbitrate later on, right? That's kind of the deal we make, where in a Section 4 or the summary stage, we're going to construe it all in favor of the non-movement, but that doesn't deny the party claiming arbitration the opportunity to move later if the facts turn up differently. Right, and that is the key dispute in this case. If there is no advisor agreement, then we have no breach of contract claim, so there will be further proceedings on that issue. But, yes, if it's established that there is no advisor agreement, then there will be further proceedings. Does anything in the shareholder agreement or the adherence agreement, the various agreements that may be subject to arbitration, does any of that, do any of those terms you concede, govern the advisor relationship in terms of its compensation? No, Your Honor. ORA has been unable to point to a single term in the shareholder agreement that actually governs or affects or in any way implicates Dr. Atiyah's advisor agreement for medical consulting services. So if the advisor agreement contemplates the compensation by means of options, it doesn't incorporate any of the terms of the... It just stands on its own. It doesn't incorporate any terms of the shareholder agreement. The advisor agreement does not incorporate any terms of the shareholder agreement. How do we avoid a rule in this case that would allow... I think this is what your friend on the other side is concerned about. Pleading the existence of another contract and then at the motion to arbitrate saying, sorry, I've just introduced a fourth-order problem. I get the court to give me full litigation, contrary maybe to the broad purpose of the FAA, on this new contract, and then later on maybe it doesn't turn out that way. Should we be worried about that? I mean, the idea that this new fourth-order question between contracts does seem to create some warps in the FAA's operation when a new contract is simply pleaded. I think it necessarily does, Your Honor, because the existence of a second contract that doesn't contain an arbitration provision necessarily presents the competing principle, the counterweight to the FAA's presumption in favor of arbitration is that the parties will only be made to arbitrate issues that they have formed an agreement to arbitrate. So when there's a second contract containing no arbitration provision, the presumption shouldn't apply. There shouldn't be any thumb on the scale in favor of arbitration. So I think that's the natural outcome of a two-contract case. It seems to me that one of the issues here, and I'm not sure we had Mr. Laffone to address it, but it seems to me that one of your issues is that the district court affirmed on the ground that the two contracts were not part of a single interrelated transaction, and then you suggest that Mr. Laffone and ORA did not challenge that. That's correct, Your Honor. Would you give me more help on that argument? Yes, Your Honor. Because it seems to me that it's mere argument that it's all one contract, not any more contracts. It's one, and everything else is just determine whether you go to arbitrability eliminates that argument to some extent. The argument that we made that the court can affirm on this alternative unchallenged ground is based in the latter part of Johnson, which addresses the court's decision in International Ambassador. I understand your argument, but apply it then to this particular situation, because my worry is that he has challenged this idea that the two contracts were not part of a single interrelated transaction. I don't think that ORA has raised any challenge to the district court's findings on that interrelatedness analysis, which were that the contracts had separate consideration, they were negotiated separately. Those are the types of considerations that go to the International Ambassador ground for finding that one contract and its arbitration provision cannot apply to a second contract that doesn't contain an arbitration provision. So we see that as a separate and independent ground that the district court reached for denying the motion to compel arbitration, and as the court did, this court did in Johnson as well. It was a separate ground. Well, I understand that, but why doesn't his argument that it's all one contract and it's not two and it all comes forth in the shareholder agreement and we're bound by the shareholder agreement and everything that happens throughout this transaction is the shareholder agreement, period, why doesn't that undo that argument? I don't understand ORA to be arguing that it's all one contract. I believe what they're arguing is that there's a shareholder agreement and its arbitration provision extends to cover the advisor agreement because there are matters... I don't even think there is an advisor agreement. Right. That's also true. But I think they make an argument that even if there exists an advisor agreement, the arbitration provision in the shareholder agreement would extend to the advisor agreement. And our argument is that in addition to that, they had to challenge the district court's separate findings, which would be reviewed for clear error under the... Well, I was just about to ask, where would we find those findings? They are in the district court's order, which I don't... Sorry, I don't have right in front of me the record citation, but the district court makes findings that... A specific finding that the contracts are not interrelated, that they were negotiated separately, that they involve separate consideration. I believe it's at the end of the discussion about the shareholder agreement right before the district court turns to the advisor. Are those... I guess this is something I've struggled with a little bit. You recite the standard of review faithfully to how we've recited the standard of review, but I'm not sure I understand it. We've got cases that say that when there's a section 4 motion for arbitration, the district court may conduct a summary trial, but otherwise we treat it as kind of a summary judgment motion, construe the lights in favor of the non-moving party, which rhymes at least with what the district court did here. And yet it sounds like you're also arguing for clear error review when typically in order to enjoy clear error review, the rules of civil procedure require some formalities to those findings. And this is in the district court's reasons. There's no separate findings of fact. Does that matter in terms of... Because if we get into trying to diagnose clear error throughout this, and the district court has not separately made those findings as required by the rules, there's a big difference between clear error and de novo. Maybe it doesn't make a difference for you. And I appreciate his question. You can add to it. And there was no trial. That's correct. This was all on pleadings. That's correct. There was no trial. I like that question. I was going to ask something similar, not nearly as well done as him, but I think that's a tough question for you. Well, the point about clear error that we made only applies to the separate ground for affirming, which we believe that the statements the district court made about the consideration being separate for the two contracts, negotiated separately, that those are factual findings about the transactions. How can you make that factual finding? I think that's what the question is. Well, you didn't have a trial. You didn't have anything except the lawyers arguing in front of you and pleadings.  Regardless of what the standard of review would be on that issue, the point, the main point, is that ORA hasn't challenged that ground at all. So this court could affirm on that ground because it is unchallenged by ORA in its opening brief. Before you run out of time, I don't know why I keep coming back to this. Is this a Fourth Order dispute under Coinbase? Yes, Your Honor. And do you want to take just a minute to distinguish this Modern Perfection case that was cited to us? The Modern, we did respond to the 28J letter, Your Honor. I saw that you did. And the main point is that Modern Perfection, well, it cites Coinbase. It only does so to say that the parties there had forfeited any reliance on Coinbase. And then its understanding of what a Fourth Order question might be, I think, is much more narrow than is warranted by the language in Coinbase itself and is inconsistent with this court's precedence in Johnson v. Walmart, which also confronted what Coinbase would call a Fourth Order dispute and is exactly the type of analysis that the district court did in this case. All right. Thank you, Ms. Peterson. Do my colleagues have any further questions? All right. Thank you very much. Mr. LaFont? Thank you, Your Honor. Just a few points, if I may. First, counsel's argument really focuses the issues. Her argument is that if parties have two contracts, one has a clear arbitration clause and the second one doesn't, that everything is a question of formation. You don't apply the presumption in favor of arbitrability. You don't delegate nothing. So parties could enter into a contract that says, we want to arbitrate disputes occurring out of this contract. We're going to enter into it on this date, and we want to arbitrate this. And because they did that here, this one is naturally silent. Well, I think, for example, Justice Gorsuch's concurrence in Coinbase referred to that. We don't have any terms like that here. We don't have any forward-looking incorporation. No, that's not correct, Your Honor. The arbitration agreement contemplates transactions happening. But that's not the shareholder agreement? Yes. Yes, Your Honor. Yes, Your Honor. And Justice Gorsuch's concurrence, while important, is not the majority opinion. And the majority opinion multiple times says the Fourth Order question here is where there is a conflict. And the conflict that the Court identified in Suskie was when one thing says the opposite of the other. And that's very important, especially because of what this Court said in the Ninth Circuit opinion. So you don't think there can be a conflict between two agreements where one has an arbitration clause and the other has none? That's not a conflict? I would either say it's not a conflict or it's a conflict that's been solved by the first arbitration agreement. But sort of backing up, that question under Portland Gas and Electric is the arbitrator's — it's the arbitrator's role to answer that question. The other side— I guess, I mean, that's the — and it's one of the reasons I noted Justice Gorsuch's concurrence is because he had said that the Ninth Circuit had perhaps misappreciated something. So I want to make sure that I'm appreciating it here. But it seems like this formal distinction. I understand the formality of, well, we've got these different orders, and you can't ask when you've got two contracts. We're not allowed to ask the scope question to determine which contract governs. But it seems like some peak at the scope is built into any Fourth Order dispute. But, Your Honor, I think it's important to keep in mind what the scope is. So the scope that you're talking about is the Third Order question about who decides arbitrability. That's the scope. The delegation clause is its own arbitration agreement. That's what this Court has said over and over and over again. And so the issue, the dispute that you're looking at there, is arbitrability. And if I could make one point about how their argument about the interrelated contract shows that their reading of Suskie and the other cases simply don't make sense. In Suskie, the way that one contract supersedes another is that it is related and it covers the same subject matter. Okay? So the only way that you would ever have a supersession where you would have this conflict is when you have two contracts that are related. But I do think that this case would be even easier under that test because we're not dealing with succeeding contracts. We're dealing with, at least under the Johnson framing, we're dealing with contracts about two different subject matters. I agree that it's easier, Your Honor. Two different sets of transactions. I agree that it's easier, Your Honor. I bet you do. There can be no supersession when the contracts — So Coinbase only applies to these kind of supersession orders. I mean, Judge Christensen's concern is mine, that what's the limiting principle on the other side, that any time you have any contract that has a delegation provision, which you're suggesting are the magic words here, any succeeding contract related to any other transaction, regardless of consideration of the scope of the first contract, is swept into it for purposes of arbitration. Yes, Your Honor. That's the rule of Portland Gas and Electric. And it's also the exact concern that Henry Schein got at. Your concern is a good concern. And what the Court said is that arbitrable tribunals have things in place to punish people who bring frivolous claims. But that's where that goes. And so an argument, if there's a second contract, and this is what Modern Perfection says, they're also asking you to create a circuit split, says that a Fourth Order question asks whether or not that second contract countermands the first. And they don't argue that here. There's no supersession dispute. And whether or not a dispute over that second contract is in the first is a classic arbitrability question that goes to the arbitrator. Thank you. Thank you, Mr. LaFond. Thanks to both counsel for your help with this case today. And it is submitted.
judges: SMITH, JOHNSTONE, Christensen